FILED
2019 Apr-17 AM 09:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, | }<br>}<br>} |
| Plaintiff, | }<br>} |
| v. | } Case No.: 2:18-cv-01887-RDP<br>}<br>} |
| BROWN MECHANICAL CONTRACTORS, INC., et al., | }<br>} |
| Defendants. | |

**MEMORANDUM OPINION**

This case is before the court on Defendants' motion to dismiss. (Doc. # 9). For the reasons explained below, the motion is due to be denied.

**I. Background**[1]

This is a contract action between (1) Travelers Casualty and Surety Company of America ("Travelers") and (2) several defendants who contractually agreed to indemnify Travelers against certain losses (the "Indemnitors"). The complaint alleges the Indemnitors breached their contract with Travelers by failing to reimburse Travelers for losses it incurred in connection with certain surety bonds it issued on the Indemnitors' behalf. (Doc. # 1 at ¶¶ 14-26). Travelers also claims the Indemnitors breached their contractual obligations by failing to provide Travelers with collateral sufficient to discharge the losses Travelers may incur in connection with one of the surety bonds. (*Id.* at ¶¶ 25, 37-38). The Indemnitors respond that this entire lawsuit should be

---

[1] For purposes of ruling on Defendants' motion to dismiss, the court treats the factual allegations of the complaint (Doc. # 1) as true, but not its legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

dismissed or stayed under either Alabama's abatement statute or the *Colorado River* abstention doctrine. (Doc. # 9 at 3-9).

Travelers is a surety company that issues payment and performance bonds on behalf of construction contractors. (Doc. # 1 at ¶ 8). One of the Indemnitor Defendants, Brown Mechanical Contractors, Inc., ("Brown") is a contractor that performs construction projects. (*Id.* at ¶ 9-10). To secure contracts on various projects in Alabama and elsewhere, Brown obtained payment and performance bonds from Travelers. (*Id.* at ¶ 10). Through those bonds, Travelers agreed to stand as surety for Brown—*i.e.*, to guarantee Brown's faithful performance of its construction contracts. (*Id.* at ¶ 8). Under the surety bonds, if Brown defaulted on one of its contracts, Travelers was required to either (1) finish performing the contract (or arrange for someone else to do so) or (2) reimburse Brown's contractual partner its reasonable costs to complete the contract work (up to a maximum amount known as the "penal amount" of the bond). (Doc. # 1-7 at 39).

In 2011, years before Travelers issued the bonds relevant to this litigation, Brown and several other Indemnitors executed a General Agreement of Indemnity with Travelers. (Doc. # 1 at ¶ 11; Doc. # 1-1). Through the Indemnity Agreement, the Indemnitors made several promises to Travelers. Two are relevant here. First, the Indemnitors agreed to indemnify Travelers "from and against all Loss." (Doc. # 1 at ¶ 12; Doc. # 1-1 at 1). The Indemnity Agreement defined the term "Loss" as "[a]ll loss and expense of any kind or nature, including attorneys' and other professional fees, which [Travelers] incurs in connection with any Bond or this Agreement." (Doc. # 1-1 at 1). The term "Bond" as used in the Indemnity Agreement is further defined to mean "[a]ny and all bonds . . . issued for or on behalf of [the Indemnitors], whether executed or procured before, on, or after the execution of this Agreement." (*Id.*). Second, the Indemnitors

agreed "to deposit with [Travelers], upon demand, an amount as determined by [Travelers] sufficient to discharge any Loss or anticipated Loss." (*Id.* at 2). As explained in more detail below, Travelers alleges the Indemnitors have breached both of these agreements.

Sometime after executing the Indemnity Agreement, Travelers issued a bond on behalf of Brown in favor of the Birmingham Plumbers and Steamfitters Local 91 Health and Welfare Plan (the "Union"). (Doc. # 1 at ¶ 14). The penal amount of this bond (the "Union Bond") was $50,000. (*Id.*). In August 2017, the Union submitted a claim on the bond, asserting that Brown owed $76,674.86 in unpaid contributions to the Union. (*Id.* at ¶ 15). When Travelers contacted Brown about the claim, Brown did not dispute the validity of the Union's claim. (*Id.* at ¶¶ 16-18). Instead, Brown told Travelers that it planned to pay the Union out of funds Brown expected to receive from another project. (*Id.* at ¶ 18). Because Brown did not dispute the Union's claim, Travelers paid the Union $50,000 (the penal amount of the Union bond). (*Id.* at ¶ 19). Travelers thereby satisfied its obligations under the Union bond. (*Id.*). In this lawsuit, pursuant to the terms of the Indemnity Agreement, Travelers seeks indemnification from Brown and the other Indemnitors for the $50,000 claim it paid on the Union bond.

Travelers issued another bond on Brown's behalf in February 2016. (*Id.* at ¶ 20). The second bond was a subcontract performance bond guaranteeing Brown's performance of a subcontract for Hardy Corporation ("Hardy"). (*Id.* at ¶ 20). Hardy is a contractor that was performing certain work related to the construction of a new body shop at the Mercedes-Benz manufacturing facility in Vance, Alabama. (Doc. # 1-7 at 1-2). The penal sum of this bond (the "Hardy bond") was $973,440. (Doc. # 1 at ¶ 20).

Disputes arose during the course of Brown's work for Hardy on the Mercedes-Benz project. (*Id.* at ¶ 21). Hardy alleges Brown failed to supply an adequate workforce to comply

with the time constraints in their contract, and that as a result Hardy had to supplement Brown's work so the project could be completed in a timely manner. (*Id.*). Hardy claims that Brown's alleged default cost it several hundred thousand dollars in additional funds to complete the project on time. (*Id.* at ¶¶ 22-23). Hardy therefore sued Brown in the Circuit Court of Jefferson County, Alabama, seeking $661,100.28 in damages for breach of contract. (*Id.* at ¶ 23; Doc. # 1-7). Hardy also named Travelers as a defendant in that lawsuit, seeking to recover the full amount of Brown's liability from Travelers, based on the surety bond Travelers had issued on Brown's behalf. (Doc. # 1-7 at 1, 17-19). As a result of the Hardy bond, Travelers is currently exposed to a potential judgment of $661,100.28 in Hardy's state-court lawsuit.

A few months after Hardy filed suit against Brown and Travelers, Travelers sent Brown and the other Indemnitors a demand letter seeking to enforce the Indemnity Agreement. (Doc. # 1 at ¶ 25). The letter demanded the Indemnitors tender payment to Travelers in the amount of $57,574.50 to indemnify Travelers for its loss and expenses in connection with the two bonds issued on Brown's behalf—$50,000 for Travelers' payment to the Union and $7,574.50 for expenses Travelers had incurred defending the lawsuit against Hardy. (Doc. # 1-8 at 1-2). The letter also demanded the Indemnitors immediately deposit with Travelers a sum of $661,100.28 (the amount sought by Hardy in the state-court lawsuit), in accordance with their agreement to "deposit with [Travelers], upon demand, an amount as determined by [Travelers] sufficient to discharge any . . . anticipated Loss." (*Id.* at 2-3).

The Indemnitors failed to comply with the demand letter, so Travelers filed this lawsuit. Travelers seeks both indemnification (*i.e.*, money damages) and specific performance of the collateral security portion of the Indemnity Agreement. (Doc. # 1 at 9-12). In money damages, Travelers seeks (1) $50,000 as reimbursement for the amount it paid under the Union bond and

(2) an amount sufficient to compensate it for all loss and expenses (including costs and attorneys' fees) it has incurred as a result of executing the Hardy bond. Travelers also seeks an order of specific performance directing the Indemnitors to post collateral in an amount not less than $661,100.28—the amount for which Travelers is potentially liable under the Hardy bond in Hardy's ongoing state-court lawsuit.

## II. Analysis

In their motion to dismiss, the Indemnitors do not dispute the merits of Travelers' claims under the Indemnity Agreement. Instead, they ask the court to dismiss or stay this action under either Alabama's abatement statute or the *Colorado River* abstention doctrine. (Doc. # 9 at 3-9). But neither the abatement statute nor *Colorado River* provides a basis to dismiss or stay this lawsuit. The Indemnitors' motion is therefore due to be denied.

### A. Dismissal Is Not Warranted Under Alabama's Abatement Statute

Alabama's abatement statute provides that "[n]o plaintiff is entitled to prosecute two actions in the courts of this state at the same time for the same cause and against the same party." Ala. Code § 6-5-440. If a plaintiff does simultaneously sue the same party on the same cause in two different actions, "the defendant may require the plaintiff to elect which he will prosecute." *Id.* And, if the plaintiff commences the repetitive lawsuits at different times, "the pendency of the former is a good defense to the latter." *Id.* Here, the Indemnitors argue that the pendency of Hardy's state-court lawsuit (in which Brown and Travelers are codefendants) requires dismissal of this action under Alabama's abatement statute.[2] The court disagrees.

---

[2] There is a substantial question whether Alabama's abatement statute even applies in a federal diversity action under the principles announced in *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938) and its progeny. *Compare Simmons v. Pulmosan Safety Equip. Corp.*, 471 F. Supp. 999, 1001 (S.D. Ala. 1979) (concluding the abatement statute applies in federal court), *with Am. Cas. Co. of Reading, Pennsylvania v. Skilstaf, Inc.*, 695 F. Supp. 2d 1256, 1258-60 (M.D. Ala. 2010) (concluding the abatement statute does not apply in federal court). But the court need not resolve that issue because, as explained below, the statute provides no basis to dismiss this lawsuit even assuming it applies in federal court.

5

Hardy's state-court lawsuit is captioned *Hardy Corporation v. Brown Mechanical Contractors, Inc.*, No. CV-2017-902717. It was filed on July 6, 2017, in the Circuit Court of Jefferson County. As discussed above, Hardy has asserted an approximately $661,000 breach-of-contract claim against Brown in that lawsuit. (Doc. # 1-7 at 1-20). Hardy has also asserted a claim against Travelers for an equal amount based on the surety bond Travelers issued guaranteeing Brown's performance of its subcontract with Hardy. (*Id.*). In response, Brown asserted its own breach-of-contract counterclaim against Hardy, stating that it never defaulted on the subcontract and that Hardy still owed it some $817,000 for work Brown performed under the subcontract. (Doc. # 9-1 at 3-20). Brown also asserted a crossclaim against its codefendant, Travelers, for the same amount. (*Id.* at 20). Evidently, when Hardy failed to pay Brown for its work under the subcontract, Brown filed a lien against the Mercedes-Benz project. (*Id.*). In response, Hardy posted a lien transfer bond (issued by Travelers on Hardy's behalf) in order to remove the lien from the project. (*Id.*). Brown's crossclaim against Travelers is based on that lien transfer bond. (*Id.*). According to Brown, "[u]nder the terms of the bond, any judgment for Brown [on its counterclaim against Hardy] must be paid by Travelers if Hardy fails to satisfy the judgment." (*Id.* at 20, ¶ 4). Though Travelers has multiple claims pending against it in the state-court litigation (Hardy's initial claim for approximately $661,000 and Brown's crossclaim for approximately $817,000), Travelers has not asserted any claims of its own in the state-court action.

Alabama's abatement statute says that "[n]o plaintiff is entitled to prosecute *two* actions . . . at the same time for the same cause and against the same party." Ala. Code § 6-5-440 (emphasis added). Here, Travelers is prosecuting a *single* action against the Indemnitors—this federal lawsuit seeking relief under the Indemnity Agreement. Travelers is not a "plaintiff" in the

6

state-court action in any sense of the word—it has not asserted *any* claims in that lawsuit. Under § 6-5-440's plain text, that fact would appear to foreclose any argument that the state-court action (in which Travelers is a merely a defendant) provides a basis for dismissing Travelers' federal lawsuit.

However, the Alabama Supreme Court has held that § 6-5-440 bars a plaintiff's claim if the plaintiff should properly have asserted the claim as a compulsory counterclaim in a prior pending action. *Ex parte Parsons & Whittemore Alabama Pine Const. Corp.*, 658 So. 2d 414, 416, 418-19 (Ala. 1995); *Penick v. Cado Sys. of Cent. Alabama, Inc.*, 628 So. 2d 598, 599-601 (Ala. 1993). For example, if A sues B in suit 1, and B subsequently sues A in suit 2 (while the first lawsuit is still pending), B's claim in suit 2 will be barred if B properly should have asserted that claim as a counterclaim to A's claim in suit 1. *See Parsons & Whittemore*, 658 So. 2d at 416, 419. The court must therefore determine whether any of the claims Travelers asserts in this lawsuit qualify as compulsory counterclaims in the state-court action initiated by Hardy. Any claims in this lawsuit that should properly have been asserted as compulsory counterclaims in the state-court action would be barred by § 6-5-440.

In Alabama courts, a compulsory counterclaim is any claim which "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Ala. R. Civ. P. 13(a). Alabama courts apply a "logical relationship" test "to determine what is and what is not a compulsory counterclaim." *Parsons & Whittemore*, 658 So. 2d at 418. Under that test, "a counterclaim as compulsory if (1) its trial in the original action would avoid a substantial duplication of effort or (2) the original claim and the counterclaim arose out of the same aggregate core of operative facts." *Ex parte Canal Ins. Co.*, 534 So. 2d

582, 584 (Ala. 1988). Here, the issue is whether Travelers' claims against Brown and the other Indemnitors in this lawsuit qualify as compulsory counterclaims to Brown's crossclaim against Travelers in the state-court action. As explained below, they do not.

Brown's crossclaim against Travelers in the state-court action is based on a lien transfer bond Travelers issued on behalf of Hardy for the benefit of Brown. (Doc. # 9-1 at 20, ¶ 3). When Hardy refused to pay Brown for all of the subcontracting work Brown performed on the Mercedes-Benz project, Brown filed a lien against the project. (*Id.* at ¶ 1). To remove the lien from the project, Hardy obtained a lien transfer bond from Travelers to post as surety for the benefit of Brown, the lienholder. (*Id.* at ¶ 2-3). Under the terms of the bond, Brown claims that any judgment it obtains on its counterclaim against Hardy (for failing to pay Brown for all its work under the subcontract) must be paid by Travelers if Hardy fails to satisfy the judgment. (*Id.* at ¶ 4).

The claims Travelers asserts in this lawsuit arise out of an entirely separate series of transactions and occurrences than does Brown's state-court crossclaim against Travelers. In 2011 -- years before Brown agreed to work with Hardy on the Mercedes-Benz project and years before Hardy obtained the lien transfer bond giving rise to the crossclaim -- Brown and the other Indemnitors executed an Indemnity Agreement with Travelers. Whether Brown and the other Indemnitors are liable to Travelers under that agreement will turn on facts that are largely irrelevant to Brown's crossclaim against Travelers in the state-court action.

For example, whether the Indemnity Agreement constitutes an enforceable contract -- evidencing mutual agreement, supported by valid consideration, with sufficiently definite terms -- will turn on facts that occurred in 2011, when the contract was allegedly formed. The meaning, terms, and legal effect of the Indemnity Agreement will turn on general principles of contract

law that do not depend in any way on Brown's state-court crossclaim against Travelers. And finally, whether the Indemnitors have breached the Indemnity Agreement or have valid defenses to any breach will likewise turn on facts unrelated to Brown's state-court crossclaim. It is a relatively simple question whether or not the Indemnitors have reimbursed Travelers for loss and expenses it has incurred in connection with the Union and Hardy bonds (or whether they have a defense that excuses their nonperformance). Those questions can easily be resolved separate and apart from the ongoing state-court litigation.

The only issue in this lawsuit to which the state-court litigation will be directly relevant is ascertaining Travelers' damages (if liability is established). Travelers seeks damages from the Indemnitors sufficient to reimburse it for the costs of defending Hardy's claim in the state-court lawsuit. Travelers also demands the Indemnitors post collateral equal to the amount Hardy seeks from Travelers in the state-court action ($661,100.28). However, there is absolutely no reason that damages in this contract action cannot be calculated based on Travelers' litigation expenses and potential liability to Hardy in the state-court lawsuit (assuming liability is established). And there is no pressing reason that arithmetic must be done *in* the state-court action, as opposed to this federal lawsuit. That the state-court action is relevant to Travelers' potential damages in this lawsuit is insufficient, by itself, to render Travelers' indemnification claims compulsory counterclaims to Brown's crossclaim.

In short, litigating Travelers' indemnity claims in the state-court action instead of this federal action would not avoid a substantial duplication of effort. Even if Travelers' claims were asserted in the state-court action, their success would turn on facts and legal principles that are largely irrelevant to the other claims asserted in the state-court litigation, and entirely irrelevant to Brown's crossclaim. Simply put, Travelers' indemnification claims and Brown's crossclaim

do not arise out of the same aggregate core of operative facts. Travelers' indemnification claims arise out of a 2011 contract executed by three persons who are not parties in the state-court action, and the success of those claims turns on facts that are largely irrelevant to the claims asserted in the state-court action. Brown's state-court crossclaim against Travelers arises out of a lien transfer bond Travelers issued on behalf of Hardy—years after the 2011 Indemnity Agreement. Moreover, that bond is not even covered by the Indemnity Agreement. Accordingly, the claims Travelers asserts in this lawsuit are not compulsory counterclaims it was required to assert in the state-court lawsuit. For that reason, Alabama's abatement statute, Ala. Code § 6-5-440, provides no basis to dismiss Travelers' claims.

### B. Abstention Is Not Warranted Under *Colorado River*

In *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976), the Supreme Court held that federal district courts should sometimes abstain from adjudicating a case properly within their jurisdiction due to the presence of ongoing parallel state judicial proceedings. But the cases in which *Colorado River* abstention is appropriate are rare. Given federal courts' "virtually unflagging obligation" to exercise the jurisdiction Congress has given them, abstention under *Colorado River* is appropriate only in truly "exceptional" circumstances. *Id.* at 817-18. For that reason, the Eleventh Circuit has held that courts confronted with a request to abstain under *Colorado River* must extend "a heavy bias in favor of exercising jurisdiction." *Ambrosia Coal & Const. Co. v. Pages Morales*, 368 F.3d 1320, 1332 (11th Cir. 2004).

Before a federal court may abstain under *Colorado River*, two conditions must obtain. First, the parallel state and federal proceedings must be sufficiently similar to make *Colorado River* abstention available as a threshold matter. *Id.* at 1329-30. Second, even in those circumstances where the threshold requirement is met, the court must balance several factors and

conclude that they "weigh strongly in favor of abstention." *Id.* at 1334. Neither of those conditions is present here, and *Colorado River* abstention is therefore unwarranted.

As a threshold matter, the Eleventh Circuit has held that *Colorado River* abstention is available only "when [parallel] federal and state proceedings involve substantially the same parties and substantially the same issues." *Id.* at 1330. This case fails that threshold requirement. Whether this case and the state-court action involve substantially the same parties is a close question. The state-court action was initiated by Hardy (not a party in this case) and has two defendants—Brown and Travelers (who are parties in this case). This federal lawsuit was initiated by Travelers against Brown and three additional defendants (who are not parties in the state-court action). But even assuming the two cases involve substantially the same parties, they do not involve substantially the same issues.

The state-court lawsuit involves three basic issues: (1) whether either Hardy or Brown owes the other money under their subcontract involving the Mercedes-Benz project; (2) if Brown owes Hardy money, whether Travelers is also liable for that amount based on Traveler's bond guaranteeing Brown's performance; and (3) if Hardy owes Brown money, whether Travelers is also liable for that amount based on the lien transfer bond it issued on behalf of Hardy. (Docs. # 1-7, 9-1). By contrast, this federal lawsuit involves an entirely distinct question not at issue in the state-court action: whether Brown and the other three Indemnitors are liable to Travelers under the 2011 Indemnity Agreement for loss and expenses Travelers has incurred in connection with the Union and Hardy bonds (but not the lien transfer bond). (Doc. # 1). Because the state and federal proceedings do not involve substantially the same issues, abstention under *Colorado River* is unwarranted.

Moreover, even if the two cases involved substantially the same parties and issues, abstention under *Colorado River* would still be improper. In interpreting *Colorado River* and its progeny, the Eleventh Circuit has identified "six factors that must be weighed in analyzing the permissibility of abstention." *Ambrosia*, 368 F.3d at 1331. Those factors are "(1) whether one of the courts has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, and (6) the adequacy of the state court to protect the parties' rights." *Id.* Additionally, "the Supreme Court has also emphasized the importance of considering whether the concurrent cases involve a federal statute that evinces a policy favoring abstention." *Id.* (citing *Colorado River*, 424 U.S. at 819).

Neither this court nor the state court has assumed jurisdiction over property, so the first factor is not in play.

The second factor, the inconvenience of the federal forum, "should focus primarily on the physical proximity of the federal forum to the evidence and witnesses." *Id.* at 1332. Here, both the federal courthouse and state courthouse in which the parallel cases are pending are located in Jefferson County, Alabama. Thus, whatever the location of the evidence and witnesses, the federal forum will be no less convenient than the state forum. This factor therefore weighs against abstention.

The third factor, the potential for piecemeal litigation, is not implicated simply by the mere fact of parallel state and federal litigation. *Id.* at 1333. Were that the case, this factor "would seemingly support abstention in every federal case that has a parallel state case." *Id.* Instead, the third factor "does not favor abstention unless the circumstances enveloping those cases will likely lead to piecemeal litigation that is *abnormally excessive or deleterious*." *Id.*

(emphasis added). In *Colorado River* itself, for example, "the Federal Government sued 'some 1,000 water users,' seeking a declaration of the Government's rights to waters in certain rivers and their tributaries." *Id.* (quoting *Colorado River*, 424 U.S. at 805). Nothing approaching that level of excessive or deleterious piecemeal litigation is potentially at issue here. Indeed, because the federal lawsuit involves an entirely separate contract (the 2011 Indemnity Agreement) not at issue in the state-court action, the rights of the parties as to the 2011 Indemnity Agreement can be fully and finally determined in this case without any adverse impact on the ongoing state-court action. Thus, the third factor also weighs against abstention.

The fourth factor, the order in which the fora obtained jurisdiction, should not be evaluated "exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 (1983)). Here, though the state-court action was filed more than a year before this federal action, it is not at all clear that the proceedings that have occurred in state court materially advance the claims at issue in this case. Again, the claims in this case focus on the parties' rights under the 2011 Indemnity Agreement, and that agreement has not been put in issue in the state-court action. Additionally, to the extent the state-court litigation would help advance the claims in this lawsuit, the parties have agreed that "discovery completed in the State Court Action may be used in this action as if it had been completed in this action." (Doc. # 22 at 5). This factor does not favor abstention.

The fifth factor considers whether state or federal law applies. Though the application of state law rather than federal generally favors abstention, the factor is of little weight in a diversity case where there are no "complex questions of state law" at issue. *Ambrosia*, 368 F.3d at 1334 (citing *Noonan South, Inc. v. County of Volusia*, 841 F.2d 380, 382 (11th Cir. 1988)). In

*Noonan South*, for example, the Eleventh Circuit gave little weight to the fifth factor in a diversity case that involved "simple tort and breach of contract claims" under state law. 841 F.2d at 382. The claims in this case are likewise simple breach-of-contract claims, not complex state-law claims "that a state court might be best suited to resolve." *Id.* This factor does not favor abstention.

The sixth factor concerns whether the state court resolution would protect the rights of all the parties. If the other Indemnitors besides Brown (who are not currently parties in the state-court action) were impleaded into the state lawsuit, there is no question that the state court could adequately protect the rights of all the parties. But this court is equally capable of protecting the rights of all the parties. For that reason, "the sixth factor is neutral with regard to abstention." *Ambrosia*, 368 F.3d at 1334.

Finally, it is worth mentioning that the "single most important factor" in the *Colorado River* decision itself -- a "federal statute upon which the lawsuit revolved [that] evinced a clear federal policy of avoiding the piecemeal adjudication of water rights in a river system" -- is not present in this case. *Id.* at 1333 (citing *Colorado River*, 424 U.S. at 819). For all these reasons, the relevant factors "do not weigh strongly in favor of abstention" in this case. *Id.* at 1334. The court therefore declines the Indemnitors' request to dismiss or stay this action under *Colorado River*.

**III. Conclusion**

For the reasons explained above, Defendants' motion to dismiss (Doc. # 9) is due to be denied. A separate order will be entered.

DONE and ORDERED this April 17, 2019.

                                            _____
                                            R. DAVID PROCTOR
                                            UNITED STATES DISTRICT JUDGE